# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In Re: ) | |
| ) | Case No. 3:11-bk-08916 |
| AIRPLAY DIRECT, LLC ) | |
| ) | Involuntary Chapter 11 |
| Alleged Debtor. ) | |

## EXPEDITED MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, EXAMINER, PURSUANT TO 11 U.S.C. § 1104

Clif Doyal, Scott Welch, Raleigh Squires, and Sussman & Associates, P.C. (collectively, the "Petitioning Creditors"), unsecured creditors in the above-captioned chapter 11 bankruptcy case, hereby move the Court pursuant to 11 U.S.C. § 1104 and Local Bankruptcy Rule 9075-1 for appointment of a chapter 11 trustee; or in the alternative, an examiner. In support of the relief requested, the Petitioning Creditors state as follows:

### I. EXPEDITED RELIEF PURSUANT TO L.B.R. 9075-1

1. The Petitioning Creditors seek (a) the appointment of a Chapter 11 trustee to take control of the Alleged Debtor's operations for the benefit of the estate and enjoin current management from interfering with such operations, or in the alternative, (b) the appointment of an examiner to review, among other things, (i) the Alleged Debtor's historical and current financial performance, (ii) the management of the Alleged Debtor leading up to and in response to the Involuntary Petition filed in this case, and (iii) whether further action is warranted based on the results of such investigation.

2. As set forth more fully below, the Petitioning Creditors have no confidence in the Alleged Debtor's ability to manage its affairs and seek immediate appointment of a Trustee. Waiting for resolution of the involuntary petition or normal notice and timing requirements

would delay the installation of a manager with the estate's best interest and will threaten the viability of the Alleged Debtor as a going concern. Immediate relief is required as the Alleged Debtor's principal, Robert Weingartz ("Mr. Weingartz") has made multiple threatening remarks to some of the Petitioning Creditors regarding the company and has specifically made reference to sabotaging the Alleged Debtor if steps were taken to remove him from power. Mr. Weingartz has further shown an inability to manage the Alleged Debtor in any way except that benefits himself. For instance, Mr. Weingartz puts his personal well-being above that of the Alleged Debtor despite his fiduciary duties: on May 30, 2011, Mr. Weingartz requested that Clif Doyal, Executive VP of the Alleged Debtor at the time, empty the Alleged Debtor's bank accounts because of Mr. Weingartz's personal needs despite looming threats of the Alleged Debtor's website, its life blood, of being disconnected for failure to pay hosting fees. This request was reiterated even after Mr. Doyal's clear indication of the business needs for the cash. In addition, the Alleged Debtor's workforce has shrunk to almost nothing in the past 12 months, as six management-level employees and/or advisory board members have left the company. These departures are due in no small part to Mr. Weingartz's failures as a manager of the Alleged Debtor. As a result, immediate relief is required.

3. Notice of this expedited motion was provided through the CM-ECF system, as well as by email, regular mail, and hand delivery to the known parties listed on the attached service lists. The parties on the list are comprised of known creditors of the Alleged Debtor, known equity holders of the Alleged Debtor, and Mr. Weingartz. A copy of this Motion and exhibits was provided together with the summons and involuntary petition in this case upon the Alleged Debtor through Mr. Weingartz. A true and correct copy of the proposed form of order is annexed hereto as Exhibit A.

4. The Petitioning Creditors seek a hearing on this motion as soon as the Court's calendar permits. As set forth below, immediate irreparable harm requires such expedited timing.

5. The Petitioning Creditors further submit the following as additional support for this expedited motion:

## II. FACTUAL BACKGROUND

6. The Petitioning Creditors filed an involuntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") against AirPlay Direct, LLC (the "Alleged Debtor") on September 6, 2011 (the "Petition Date").

### A. General Background Facts

7. The Alleged Debtor was created as a Georgia limited liability company on July 25, 2005, with a principal place of business in Smyrna, Georgia. In November 2010, the Alleged Debtor moved its principal place of business to 24 Music Square West, Nashville, TN 37203. In approximately April 2011, the Debtor moved its principal place of business to Mr. Weingartz's apartment home at 231 Green Harbor Road, Suite 136, Old Hickory, TN 37138.

8. The Alleged Debtor is the owner and operator of a subscription music promotion service, run primarily through a website. Artists, radio programmers, and record labels are all subscribers to the service, which works to connect creative artists with potential outlets for distribution of their music.

9. The primary value of the Alleged Debtor's is the subscriber list and the software platform utilized in connecting subscribers. Currently, there are approximately thirty thousand (30,000) subscribers to the website, who pay a monthly fee to use the services. The Alleged Debtor's web platform is currently at or near its capacity in light of the number of subscribers to

the service. The Alleged Debtor also has revenue sharing arrangements with certain strategic partners such as CD Baby and Musicians on Call.

10. The Alleged Debtor appears to be a board managed limited liability company, with Robert Weingartz as the Chairman & CEO of the Alleged Debtor. There only appears to be one remaining board member.

11. Upon information and belief, Robert Weingartz holds approximately fifty one percent (51%) of the outstanding membership units in the Alleged Debtor, with no other holder in possession of more than approximately fifteen percent (15%) of the outstanding units.

**B.     Insolvency**

12. Since approximately early 2010, the Alleged Debtor has generally been unable to pay its debts as they come due. Over the past several years, the Alleged Debtor has constantly been soliciting new investment money to meet its operating capital needs.

13. Specifically, the Petitioning Creditors have claims relating to the following debt obligations reaching back as far as two years:

    a.     Clif Doyal: $72,290 in accrued compensation on account of employment in various management capacities from August 1, 2009 through May 31, 2011, and $803 in unpaid approved reimbursable expenses;

    b.     Scott Welch: $105,465 of accrued compensation on account of employment as President of the Alleged Debtor from November 1, 2009 through February 15, 2011, and $6,250 of past due office rent from 2010;

    c.     Raleigh Squires: $13,000 of accrued compensation on account of employment as operations manager of the Alleged Debtor from January 1, 2010 through August 2, 2010, and an estimated eleven thousand two hundred fifty dollars ($11,250) in

unpaid earned commissions from September 2, 2009 through August 2, 2010; and

  d. Sussman & Associates, P.C.: $27,721.38 of past due invoices for accounting services provided from November 2009 through June 30, 2011.

14. More generally, upon information and belief the Alleged Debtor is behind on general unsecured and trade vendor claims to parties such as the web hosting provider, the website development service provider, the web marketing provider, attorneys, and the website platform developers, with many obligations being overdue since at least November 30, 2010. Upon information and belief, the Alleged Debtor is also not current with its strategic partners with which the Alleged Debtor has revenue sharing arrangements.

15. In addition, upon information and belief, the Alleged Debtor's assets, namely its subscription list, website platform, and strategic agreements, are worth less than the outstanding liabilities of the company, which includes the former employees, trade vendors, strategic partners, and certain loans from various interest holders.

16. The most recent available financial statements demonstrate negative net income for the months January and February, 2011, a negative interest-holder equity as of such months, and an asset value of approximately $181,000 (without deduction for accumulated depreciation) compared to a current liability amount of approximately $217,000. The financial statements for the year ending December 31, 2010 also show a negative operating income of approximately $23 thousand dollars and similar asset and current liability amounts.

**C. Loss of Corporate Opportunities**

17. Due to Mr. Weingartz's personal issues, Mr. Welch, Mr. Doyal and Mr. Squires were running the Alleged Debtor in 2010 and early 2011. By the spring and summer of 2010 and with the help of the staff, the Alleged Debtor had gained stature in the music community,

acquired new music catalogs and artists, and achieved subscriptions from record companies. During that time of growth, Mr. Weingartz had given Mr. Welch free reign to "make the company successful." Mr. Weingartz was largely in the background during this time.

18. The Alleged Debtor's attempts to raise capital to fund expansion and pay the outstanding liabilities were thwarted by Mr. Weingartz's refusal to have any sort of financial or management guidelines as conditions to interested parties' investment. For instance, at least one potential strategic partner conditioned its offer on Mr. Welch remaining in control of AirPlay Direct, LLC, both because the potential partner had no confidence in Mr. Weingartz as a CEO, and the terms demanded by Mr. Weingartz were unreasonable and did not reflect standard business practices.

19. In February 2011, Mr. Weingartz decided to take back over the reins of the Alleged Debtor and brought in his girlfriend, Lynda Alexander as his partner. Mr. Welch had difficulty working with them and had no faith that Mr. Weingatz was capable of being a full time CEO. In response to several emotional outbursts from Mr. Weingartz, Mr. Welch resigned his employment and management positions with the Alleged Debtor.

20. In March 2011, Mr. Welch, in his capacity as strategic consultant, arranged for a meeting between the Alleged Debtor and the lead partners of a prominent website development company with an experienced management team that specializes in music. Mr. Welch outlined a plan for AirPlay Direct, LLC and the website development company to form a partnership: the developer would bring the technological support and capacity to grow the platform to service subscribers, and AirPlay Direct, LLC would provide access to artists for website development and merchandising opportunities.

21. As the discussions progressed, Mr. Weingartz refused to involve Mr. Welch or

Mr. Doyal (Executive Vice President at the time) in future meetings. The website development company voiced concerns to Mr. Welch and Mr. Doyal about Mr. Weingartz's ability to be CEO of the company. In early April, Mr. Weingartz decided he could close the transaction with the website developer and terminated Mr. Welch as strategic consultant. When the website development company learned that Mr. Welch would not be directly involved in the partnership opportunity, they refused to continue negotiations with the Alleged Debtor or Mr. Weingartz and the deal fell apart.

**D.     Loss of Key Employees and Other Prepetition Activities**

22.     In the past twelve months, the Alleged Debtor has lost at least six (6) key employees and/or members of the board of managers as a direct result of not being paid or their respective inability to succeed in their roles because of Mr. Weingartz's management of the Alleged Debtor, including:

    a.     Scott Welch – President and member of advisory board. Resigned as President effective February 15, 2011 and as member of board of managers effective March 16, 2011. Left company as a result of failure to receive compensation and inability to achieve growth of Alleged Debtor with Mr. Weingartz as principal manager of the Alleged Debtor. Remained as strategic consultant at request of Mr. Weingartz but was terminated as strategic consultant by Mr. Weingartz on April 5, 2011.

    b.     Clif Doyal – Executive Vice President and Editor of Alleged Debtor's promotional magazine, *Direct Buzz*. Resigned as of May 31, 2011 in response to Mr. Weingartz's request to drain the Alleged Debtor's accounts for his personal use and failure to receive compensation.

    c.     Mike Hagler – member of advisory board (key member who brought

Dolly Parton catalog to the company).  Resigned effective June 14, 2011.

  d. Dan Bowen – Vice President of Radio Strategies and member of advisory board.  Resigned from VP position as of March 15, 2011.

  e. Peter Fleming – Chief Technology Officer.  Left full-time employment of the Alleged Debtor in September 2010.

  f. Raleigh Squires – Operations Manager (also brought Roy Orbison and other high profile catalogs to the company).  Resigned as of August 2, 2010 as a result of failure to receive compensation and Robert Weingartz's refusal to communicate with Mr. Squires.

23. Before and as of the departure of Mr. Doyal on May 31, 2011, the Alleged Debtor lacked sufficient management controls to monitor cash flow because of Mr. Weingartz requirements of Mr. Welch and Mr. Doyal to remove funds from the company checking account for his personal expenses.  The circumstances surrounding Mr. Doyal's resignation suggest that Mr. Weingartz's loyalties do not lie with the Alleged Debtor, but his own well-being.  In addition, Mr. Weingartz has been unable to implement two valuable strategic partnership deals that were pending at the time of Mr. Doyal's departure, which deals were very near completion at the time but do not appear to have been consummated.

24. On several occasions other than Mr. Doyal's resignation, Mr. Weingartz has resisted any discussion of implementing financial and business controls.  He told Mr. Welch on at least three (3) occasions that he would destroy the company before he would give up control to anyone else.  He gave similar indications to Mr. Doyal approximately six (6) times and to Mr. Squires approximately three (3) times.

25. In further support of this expedited motion, the Petitioning Creditors submit the

following declarations: (1) Declaration of Scott Welch (Exhibit B hereto); (2) Declaration of Clifford Doyal (Exhibit C hereto); (3) Declaration of Raleigh Squires (Exhibit D hereto); and (4) Declaration of Charles Sussman (Exhibit E hereto).

## III. ARGUMENT AND AUTHORITIES

### A. Cause Exists For Appointment Of A Trustee

26. Pursuant to 11 U.S.C. § 1104(a), upon request of a party-in-interest, the Court shall order the appointment of a Chapter 11 Trustee for cause, including fraud, dishonesty, incompetence, gross mismanagement (occurring either before or after commencement of the case), or similar cause; or if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. 11 U.S.C. §§ 1104(a)(1) & 1104(a)(2).

27. Appointment of a Chapter 11 Trustee under 11 U.S.C. § 1104 is an available remedy during the "gap period" between the filing of an involuntary petition and entry of an order for relief. See In re Professional Accountants Referral Services, Inc., 142 B.R. 424, 429-430 (Bankr. D. Colo. 1992) (comparing 2 *Collier on Bankruptcy* ¶303.35 with In re Beaucrest Realty Assocs., 4 B.R. 164 (Bankr. E.D.N.Y. 1980)).

28. The examples of "cause" set forth in 11 U.S.C. § 1104(a)(1) "are not exhaustive; the Court may find cause exists for a reason not specifically set forth in the statute." See In re Cardinal Industries, 109 B.R. 755, 756 (Bankr. S.D. Ohio 1990). For instance, the following circumstances have been found to constitute cause: (1) diversion of funds and misuse of corporate assets, In re PRS Insurance Group, Inc., 274 B.R. 381, 385-86 (Bankr. D. Del. 2001); (2) management's siphoning of funds from a debtor through kickbacks, In re Bibo, Inc., 76 F.3d 256, 257-58 (9th Cir. 1996); (3) transfers of debtor's assets to companies under shareholder's common control, In re Sharon Steel Corp. 871 F.2d 1217, 1228 (3d. Cir. 1989); (4) diversion of

corporate assets for professional use, Professional Accountants Referral, 142 B.R. at 428-29; (5) conversion of corporate assets, In re Colby Constr. Corp. 51 B.R. 113, 116 (Bankr. S.D.N.Y. 1985); (6) excessive compensation, In re North American Communications, Inc., 138 B.R. 175, 179 (noting "the distinction in [management's] own minds between the corporation and themselves is blurry, perhaps even non-existent"); (7) a debtor's inability to perform the fiduciary duties to creditors or its estate, including refraining from acting in a manner which could damage the estate or hinder a successful reorganization of the business, In re Ionosphere Clubs, Inc., 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990); and (8) irreconcilable conflicts of interests that require a disinterested person to manage the debtor and investigate possible causes of action, In re Embrace Sys. Corp., 178 B.R. 112 (Bankr. W.D. Mich. 1995); PRS Insurance Group, 274 B.R. at 387-89.

29. In the case at hand, Mr. Weingartz has failed to live up to his fiduciary duties to the Alleged Debtor, instead he is making sure that virtually all available cash goes toward his compensation and not toward creditors of the company. Mr. Weingartz lacks any concern for the long-term health of the company, and has even indicated that he would destroy the company and have it "die on the vine" rather than allow anyone else to have control. As a result, the viability of the Alleged Debtor as a going concern is at risk. Removing essentially half of each month's revenues for personal use constitutes excessive compensation under the circumstances. By not having any other party approve those disbursements, Mr. Weingartz has full ability to remove company assets with the stroke of a pen. In fact, Mr. Weingartz has routinely instructed his President and Executive Vice President to empty the Alleged Debtor's account because of Mr. Weingartz's personal needs. Given Mr. Weingartz's actions, it appears that Mr. Weingartz has very little distinction between the Alleged Debtor's and his own interests, and thus will be unable

to live up to his fiduciary duties to the Alleged Debtor's estate. In addition, given the removal of cash from the Alleged Debtor for the benefit of Mr. Weingartz, there exist irreconcilable conflicts of interest regarding such transfers.

30. While there is a general presumption against the appointment of a Chapter 11 Trustee, such presumption is based on a debtor's familiarity with its business and its obligation to act as a fiduciary for its creditors. In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (3d. Cir. 1998). In this case, the Alleged Debtor's actual operations are minimal, certain of the Petitioning Creditors are very familiar with the Alleged Debtor's business, and the Alleged Debtor's principal has repudiated his obligation to maximize value for the Alleged Debtor's estate, including the principal's own equity stake, by stating that he would destroy the company or let it "die on the vine" before he would let anyone else take control away from him. Such blatant threats further require that appointment of a chapter 11 trustee be made immediately so that Mr. Weingartz's threats do not come to fruition.

31. A debtor-in-possession has all of the duties of a trustee in a Chapter 11 proceeding, including "the duty to protect and conserve property in its possession for the benefit of the creditors." See In re Cajun Electric Power Coop, Inc., 191 B.R. at 661. The fiduciary duties of a debtor-in-possession include "refraining from acting in a manner which could damage the estate or hinder a successful reorganization of the business." Id. Moreover, a debtor in bankruptcy has a fiduciary duty to maximize the value of the estate. See Wabash Valley Power Ass'n. v. Rural Electrification Admin., 903 F.2d 445, 451 (7th Cir. 1990); In re Big Rivers Elec. Corp., 213 B.R. 962, 968 (Bankr. W.D. Ky. 1997). When a debtor-in-possession cannot fulfill these duties, a Chapter 11 Trustee should be appointed. Cajun Electric, 191 B.R. at 661. For the

reasons stated above, the Alleged Debtor, under the control of Mr. Weingartz, is unable to fulfill its duties in this case.

**B.     A Trustee is in the Interests of Creditors and Interest Holders**

32.     Even if cause did not exist for the appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1), such appointment is nevertheless in the interests of Alleged Debtor's creditors under 11 U.S.C. § 1104(a)(2). The grounds mentioned in § 1104(a)(2) create a "flexible standard." See W.R. Grace & Co., Inc., 285 B.R. 148 (Bankr. D. Del. 2002). See also, In re Marvel Entertainment Group, 140 F.3d 463, 474 (3rd Cir. 1989) (holding that appointment of a chapter 11 trustee was appropriate for cause under § 1104(a)(1) and in the interests of all parties under § 1104(a)(2) when there was continuing acrimony between the debtor's management and creditors).

33.     Among the possible factors for consideration are: "(1) the trustworthiness of the debtor; (2) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a [chapter 11] trustee, balanced against the cost of the appointment." In re Ionosphere Clubs, Inc., 113 B.R. 164, 167-68 (Bankr. S.D.N.Y. 1990). A leading commentator further suggests that "loss of confidence" in management, even without wrongdoing, could constitute independent and sufficient grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(2). Collier on Bankruptcy, ¶1104.02[3][d][iii] (15th Ed. Rev. 2008). Note that only the "interests of creditors" need be served under 11 U.S.C. § 1104(a)(2), as distinct from the "best interest" standard in 11 U.S.C. § 1104(a)(3).

34. As far as the Alleged Debtor's trustworthiness goes, the analysis begins and ends with Mr. Weingartz. He has made many representations regarding management salaries over the years but has failed to pay such managers more than a fraction of what was promised. In addition, Mr. Weingartz was willing to drain the company accounts despite having crucial trade creditors threaten to shut down the Alleged Debtor's lifeblood, its website. Mr. Weingartz promised Mr. Doyal five percent (5%) ownership in the Alleged Debtor but never made good on that promise. As a result, the Petitioning Creditors, which represent a significant portion of the creditors in this case, have no confidence in the management of the Alleged Debtor.

35. Regarding the Debtor's historical and present performance, an independent Chapter 11 Trustee would approach the performance issues and transfers to Mr. Weingartz with fresh eyes and preserve the status quo while reorganization options are pursued. The Alleged Debtor's prospects for growth have diminished since the dismantling of the management team over the past year. As a result, the Debtor is unable to meet its ongoing obligations as they come due. Only reduction of expenses or increase in revenues can ultimately fix this decline. In the meantime, an injection of capital is required to provide sufficient cash in order to rehabilitate the company. To that end, the Petitioning Creditors have identified a potential purchaser of the Alleged Debtor and have obtained an outline of an offer regarding such purchase. The potential purchaser desires to move quickly in consummating any transaction, and appointment of a chapter 11 trustee would open up the estate to potential return for creditors. This prospective purchaser may also be a source of interim financing during this chapter 11 case.

36. Appointment of a chapter 11 trustee would allow an independent third party to analyze the Alleged Debtor's financial situation, evaluate any interim financing needs, and determine if such offer provided sufficient return to the Alleged Debtor's estate. To date, Mr.

Weingartz has demonstrated an inability to consider the best interests of the Alleged Debtor's investors or its creditors.

37. In respect of confidence in current management, there is none. Mr. Weingartz's failure to act prudently has brought this course of action as the last-ditch effort to preserve value in the Alleged Debtor for its estate. The Petitioning Creditors have pursued this course of action after much deliberation and were left without other recourse. Multiple potential investors and strategic partners have refused to entertain offers to invest in the Alleged Debtor specifically because of Mr. Weingartz's management. Only through removal of Mr. Weingartz is a cost-effective rehabilitation or sale of the Alleged Debtor even possible.

38. Regarding benefits to be gained, a Chapter 11 Trustee would be able to explore and analyze the Debtor's historical and current financial performance and test the potential purchase offer that the Petitioning Creditors have obtained. Further benefits would be to stop the bleeding of the Alleged Debtor's value and provide sight lines to a genuine turn-around of service quality, service capacity, and growth. In terms of costs, the potential purchaser has further indicated a willingness to inject fifty thousand dollars ($50,000) in debtor-in-possession financing under certain conditions, which conditions include the appointment of a Chapter 11 Trustee. Compared to the Alleged Debtor's inability to cash flow, this injection of capital would significantly enhance the Alleged Debtor's estate's ability to provide a timely return to its creditors in the form of real cash.

39. In sum, appointment of a Chapter 11 Trustee, with duties to the Court and fiduciary duties to the bankruptcy estate, will benefit creditors and interest holders. In further support of the appointment of a Chapter 11 Trustee, the Petitioning Creditors seek injunctive

relief preventing Mr. Weingartz from interfering with the Chapter 11 Trustee's exercise of control over the Alleged Debtor's estate.

**C.    Injunctive Relief Is Appropriate**

40.    Petitioning Creditors are further entitled to injunctive relief in support of the appointment of a Chapter 11 Trustee because all of the criteria generally evaluated in granting such relief weigh in its favor:

>    (i)    Petitioning Creditors are likely to prevail on the merits of their claims;
>
>    (ii)   Petitioning Creditors and the Alleged Debtor's estate will suffer an irreparable injury if the Court does not grant the relief;
>
>    (iii)  the relief would not cause substantial harm to others; and
>
>    (iv)   the issuance of the relief would be in the public interest.

See G&V Lounge, Inc. v. Michigan Liquor Control Commission, 23 F.3d 1071, 1076 (6th Cir. 1994); International Longshoremen's Assoc. v. Norfolk S. Corp., 92 F.2d 900, 903 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 63, 116 L.Ed.2d 38 (1991); *see also* 11 U.S.C. § 105(a). The decision to grant the requested relief is within the Court's discretion, and rather than any one of these factors being dispositive, the Court should weigh the equities. Moltan Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1175 (6th Cir. 1995).

41.    In the case at hand, the Petitioning Creditors are likely to prevail on their Involuntary Petition and on their motion for appointment of a chapter 11 trustee. Continuation of the status quo involving the current management will result in further deterioration of the Alleged Debtor's financial condition and ability to meet its customers' needs. As a result, the creditors of the Alleged Debtor's estate are likely to lose any prospects of recovery if the current

management remains in place. Indeed, Mr. Weingartz has affirmatively stated that he would purposefully hurt the company before he would let anyone else control it. Therefore, shoring up the Alleged Debtor's website and platform and continued provision of services by a chapter 11 trustee is only possible if Mr. Weingartz is prevented from interfering with a chapter 11 trustee's efforts to maximize the value of the Alleged Debtor's estate. Bankruptcy's policy of maximizing a debtor's value for the benefit of a debtor's estate is well served by preventing interference from Mr. Weingartz.

42. The imminent nature of the harm is demonstrated by Mr. Weingartz continual statements to the Petitioning Creditors regarding his intent to destroy the Alleged Debtor, or to let it die on the vine, before he would let anyone take control away from him. Immediate issuance of a preliminary injunction will serve the interests of the Alleged Debtor's estate and will serve the public interest.

**D.   In the Alternative, An Examiner Is In the Interests of Creditors**

43. If the Court determines that a chapter 11 trustee is not warranted, the court shall order an examiner to conduct investigation of the debtor as is appropriate, including without limitation "irregularity in the management of the affairs of the debtor" by current or former management of the debtor if such appointment is in the interests of creditors. 11 U.S.C. § 1104(c).

44. As set forth above, there are significant irregularities in the Alleged Debtor's management. An examiner would be well-equipped to explore the Alleged Debtor's historical and current financial performance; the circumstances of the interrelated activities between the Alleged Debtor and Mr. Weingartz; and evaluate whether further action is warranted based on the results of such investigation.

45. To the extent that the Court either appoints a chapter 11 trustee or examiner, the Petitioning Creditors should have visibility into the findings of such Court-appointed officer. Moreover, the Petitioning Creditors will cooperate with any appointed person to provide any reasonably requested information or documentation.

46. The Petitioning Creditors expressly reserve the right to amend, withdraw, or supplement this motion at any time and for any reason in advance of any hearing on this motion, and reserves the right to argue any grounds for the appointment of a chapter 11 trustee or other relief whether or not such grounds are contained in this motion or any supplement hereto.

WHEREFORE, the Petitioning Creditors move the Court to enter an Expedited Order appointing a Chapter 11 Trustee and enjoining Mr. Weingartz from interfering with the Chapter 11 Trustee's duties; or in the alternative, an examiner; and for such other and further relief.

RESPECTFULLY SUBMITTED:

*/s/ Robert J. Welhoelter*
Robert J. Welhoelter (TN BPR # 24203)
ROBERT J.WELHOELTER, ATTY AT LAW
320 31st Avenue North, Suite A
Nashville, Tennessee 37203
Telephone: (615) 760-5871
Facsimile: (615) 760-5873
rjwelho@gmail.com

*Attorney for Petitioning Creditors*

[Exhibit A – Proposed Form of Order]
[Exhibit B – Welch Declaration]
[Exhibit C – Doyal Declaration]
[Exhibit D – Squires Declaration]
[Exhibit E – Sussman Declaration]

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading, together with exhibits thereto, was filed and served through the Court's CM/ECF system and was also delivered to the following parties in the manner indicated, on this the _7th_ day of September, 2011:

By hand delivery:

| | |
|---|---|
| AirPlay Direct, LLC | Geoffrey P. Vickers |
| Attention: Robert Weingartz | Baker Donelson Center |
| 231 Green Harbor Road, Suite 136 | 211 Commerce St., Suite 800 |
| Old Hickory, TN 37138 | Nashville, TN 37201 |

By email:

| | |
|---|---|
| Geoffrey P. Vickers | gvickers@bakerdonelson.com |
| James Dorsey | James.DorseyP.C@AGG.com |
| | james.dorsey@agg.com |
| Steve Powell/Delta Systems | spowell@deltasys.com |
| Clay Dubose | cdubose827@aol.com |
| Tony Bucher | tbucher@gracieprod.com |
| John Gillin | gillin@bellsouth.net |
| Michael Harnett | michael.harnett@gmail.com |
| Jim Hornaday | jim@hornadaydevelopment.com |
| RW Shamy, Jr. | rws463@gmail.com |
| Vickie Wood | vickie.wood@comcast.net |
| Mike Hagler | Mike.hagler@musiccitynetworks.com |
| Peter Fleming | peter@airplaydirect.com |
| Dan Bowen | danbowendb@gmail.com |
| Lotus Nile (Kissy Black) | kissyblack@lotusnile.com |
| Aleven Creatives (Tony Rodono) | tony@aleven.com |
| Rackspace (Jeremy Daniels) | jeremy.daniels@rackspace.com |
| Clif Doyal | cdanashville@aol.com |
| Raleigh Squires | raleigh@1617Virtual.com |
| Sussman & Associates (Charles Sussman) | csussman@sa-nash.com |
| Scott Welch | scott@swelchmgt.com |
| Robert Weingartz | rdw@airplaydirect.com |
| AirPlay Direct, LLC | office@airplaydirect.com |

And by U.S. Mail, postage prepaid, on the parties listed on the attached mailing labels.

*/s/ Robert J. Welhoelter*

TONY BUCHER
9853 PARKSHORE DRIVE
FISHERS, IN 46038

JAMES E DORSEY
7475 WILDERCLIFF DRIVE NW
ATLANTA, GA 30328

CLAYTON DUBOSE, JR
307 S. CLARK DR., APT. 2
LOS ANGELES, CA 90048

JOHN J GILLIN
4645 HARRIS TRAIL NW
SANDY SPRINGS, GA 30327

MICHAEL HARNETT
5856 W. ARDMORE
CHICAGO, IL 60646

JAMES Q HORNADAY
1812 E. CLAREMONT STREET
PHOENIX, AZ 85016

MICHAEL KREHER
41 W. SUMMIT ST. #77
SOUTH HADLEY, MA 01075

STEVEN R POWELL
6808 PORT ORCHARD DRIVE
COLUMBIA, MO 65203

RICHARD W SHAMY, JR
P.O. BOX 1702
GEORGETOWN, TX 78627

RALEIGH SQUIRES
4001 ANDERSON ROAD V114
NASHVILLE, TN 37217

ROBERT WEINGARTZ
231 Green Harbor Road, Suite 136
Old Hickory, TN 37138

Scott Welch Management
Attn: Scott Welch
1515 Harding Place
Nashville TN 37215

VICKIE M WOOD
2749 TERRELL RIDGE CIRCLE SE
MARIETTA, GA 30067

Geoffrey P. Vickers
Baker Donelson Center
211 Commerce St., Suite 800
Nashville, TN 37201

James E. Dorsey
171 17th Street NW
Suite 2100
Atlanta, GA 30363

Dan Bowen
9714 Onyx Lane
Brentwood TN 37027

Aleven Creatives, LLC
Attention: Tony Rodono
1261 Apple Valley Rd
Atlanta, GA 30319

Rackspace
Attention: Jeremy Daniels
PO Box 730759
Dallas TX 75373-0759

AirPlay Direct, LLC
Attention: Robert Weingartz
231 Green Harbor Road, Suite 136
Old Hickory, TN 37138

US Trustee's Office
Attn: Loyd Mueller
701 Broadway, Ste 318
Nashville, TN 37203